UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

John E. Martyak,

        Debtor.

Case No. 08-32050
Chapter 13

John E. Martyak,

        Plaintiff,

    -against-

Adv. Pro. No.
08-50046

Tioga County, New York, and James P. McFadden, Individually
and as Tioga County Treasurer and Enforcement Officer,
John T. Reynolds, CAI, Individually and d/b/a Reynolds Auction
Company, David A. Koeberle, Individually and as President of
Reynolds Auction Company, and Richard Mule,

        Defendants.

David A. Koeberle, Individually and as President of Reynolds
Auction Company, and John T. Reynolds, CAI, Individually
and d/b/a Reynolds Auction Company,

        Cross-Claimants,

    -against-

Tioga County, New York,

        Cross-Defendant.

Appearances:

Frederick Charles Luther, Esq.
Law Office of Frederick C. Luther
Attorneys for John E. Martyak
441 Broad Street
Waverly, NY 14892

Frank W. Miller, Esq.
The Law Office of Frank Miller
Attorneys for Tioga County, New York, and
James P. McFadden
6575 Kirkville Road
East Syracuse, NY 13057

Jason S. DiPonzio, Esq.
Attorney for John T. Reynolds and David A. Koeberle
16 East Main Street, Suite 420
Rochester, NY 14614

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

MEMORANDUM-DECISION AND ORDER

In this adversary proceeding, Plaintiff John E. Martyak ("Debtor") seeks recovery of title to real property and imposition of sanctions against Defendants Tioga County, New York, ("County" or "Tioga County"), James P. McFadden, Tioga County Treasurer ("Treasurer"), (collectively, "Defendants"), John T. Reynolds and David A. Koeberle, auctioneers (respectively, "Reynolds" and "Koeberle"), and Richard Mule ("Mule"). The court heard testimony over the course of a two-day trial conducted on May 20 and May 21, 2009. This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Federal Rule of Bankruptcy Procedure 7052.

*Background*

As directed by the court, the parties filed a joint stipulation of facts not in dispute, which the court has incorporated in its recitation of the facts herein.[1]

Debtor filed a chapter 13 bankruptcy petition on August 7, 2008. Debtor was the former owner of real property commonly referred to as 2445 Wilson Creek Road, Newark Valley, County of Tioga, New York ("property"). The property consists of approximately 190 acres of land improved by barns, outbuildings, a roadside mailbox and a residence. Debtor listed the property as his residence in his petition and claimed a $50,000.00 homestead exemption in the

---

[1] See Joint Stipulation of Facts, Docket No. 54.

property under New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") section 5206(a).[2] *See*

N.Y.C.P.L.R. § 5206(a). Debtor has lived at the property since purchasing it in 2005 for

$341,000.00. (Trial Tr. 6:21-24; 22:14-16, May 20, 2009). Debtor had previously owned real

property in Dutchess County which he sold in 2005 for $750,000.00. (Trial Tr. 22:21-24). From

the sale proceeds, Debtor paid $341,000.00 in cash for the property and had $110,000.00 in cash

remaining. (Trial Tr. 22:21-23:8). Debtor received a chemical engineering degree from

Clarkson College of Technology in 1982 and has been employed in the technology field ever

since, currently earning an annual salary of approximately $92,600.00. (Trial Tr. 21:15-21; 7:25-

8:2; 22:5-7). In addition to his salary, Debtor derives some income from a gas lease on the

property, on account of which Debtor collected approximately $20,000.00 in the summer of

2007. (Trial Tr. 59:10-60:6). Debtor currently works for Micron Technology, Inc. in Manassas,

Virginia, where he was employed in June 2008. (Trial Tr. 7:17-21). Although he works in

Manassas, Debtor testified that he receives his mail at the property and would return to the

property every two weeks and pick up his mail to take back with him to Manassas to read. (Trial

Tr. 6:19-7:3; 9:9-14). Debtor never provided Tioga County with any alternative address to

which bills or notices should be sent and never sought to have his mail held until he returned to

town. (Trial Tr. 24:9-19; 46:18-22).[3]

---

[2] No party objected to the Debtor's claim of homestead exemption, but since the property was
not part of the bankruptcy estate at the time of filing, there would have been no point.

[3] The court notes that it is the responsibility of the homeowner to provide a proper address to
protect his or her ownership interests. *See Harner v. County of Tioga*, 5 N.Y.3d 136, 141 (2005)
("As record owner, [homeowner] bore the responsibility of updating his address to protect his
ownership interests."); *In re Bouchard*, 810 N.Y.S.2d 565, 570 (N.Y. App. Div. 2006) ("[I]n
balancing the municipality's interest in collecting delinquent taxes against the property owner's
interest in receiving notice, consideration is given to the conduct of the owner in evaluating the
reasonableness of the notice efforts. . . . [A]s record owner, respondent bore the responsibility of
updating his address or, at least, arranging for his mail to be forwarded to his temporary out of
town address to protect his ownership interest.") (quotations, citations and alterations omitted).

Since purchasing the property, Debtor failed to make any tax payments when they came due. (Trial Tr. 23:19-24).   Based upon the Debtor's failure to pay his 2006 and 2007 real property taxes, the County brought an *in rem* tax foreclosure proceeding against the property by petition filed on December 18, 2007 ("Action").[4]   While the Action was pending, 2008 real property taxes came due and were not paid.   Between March 19 and June 26, 2008, Debtor and representatives of the Tioga County Treasurer's Office had multiple conversations concerning the unpaid property taxes.   On March 27, 2008, Debtor paid the 2007 taxes, which included accrued interest and penalties, and indicated that he would be back by the end of the month to pay the remaining balance of taxes owing.   (Trial Tr. 166:20-24; 171:11-22).   However, Debtor never returned and never paid the outstanding 2006 or 2008 taxes owed on the property.

Tioga County claims that it served the Debtor with notice of the Action by both certified mail and regular first class mail at the address of the property, in accordance with the requirements of Article 11 of the New York Real Property Tax Law.[5]   Debtor denies receiving notice of the Action including the mailed notices.   The Action was not contested and default judgment was entered in favor of Treasurer on June 11, 2008.

Pursuant to the judgment, Treasurer conveyed title to the property to Tioga County by deed filed in the Tioga County Clerk's Office on June 26, 2008, and an auction sale of the property was noticed for August 7, 2008.   The Notice of Foreclosure Sale and Order to Vacate was posted on the property on August 1, 2008.   (Trial Tr. 79:1-13).   No eviction proceeding was commenced against the Debtor.

On August 7, prior to the commencement of the auction sale of the property, Treasurer

---

[4] The Action was filed in New York State County Court, County of Tioga, and assigned Civil Action No. 36759.

[5] For a detailed discussion of the statutory scheme for the maintenance and collection of taxes under New York Real Property Tax Law see *Kennedy v. Mossafa*, 100 N.Y.2d 1, 6-8 (2003).

was provided with written notice of Debtor's bankruptcy filing.  Based upon the advice of

counsel, Tioga County proceeded with the auction sale.  Treasurer testified that at the sale he

read a statement to potential bidders that closing would take several months due to Debtor's

filing, and that "patience would have to be the order of the day." (Trial Tr. 110:10-14).  The

successful bidder at auction was Defendant Mule, who bid $665,000.00 to purchase the property

and provided the County with a deposit.  (Trial Tr. 111:2-8; Def. Ex. 4).  The sale was

subsequently cancelled upon the request of Defendant Mule and approval of the county

legislature based upon the lengthy period of time between sale and closing.  (Trial Tr. 110:19-

111:8).  To this day, title to the property remains in the County. (Trial Tr. 111:9-15).

Initially, Tioga County and Treasurer argue that this court is precluded from considering

the underlying merits of the complaint under the *Rooker-Feldman* doctrine and that the Debtor

lacks standing to bring this adversary proceeding.  Each of these arguments is considered below.

Rooker-Feldman *Doctrine*

Defendants contend that the *Rooker-Feldman* doctrine requires this court to refrain from

exercising jurisdiction over each of the claims asserted in this proceeding.  The *Rooker-Feldman*

doctrine, aptly named for the United States Supreme Court precedent which defined its

parameters, precludes lower federal courts from exercising appellate jurisdiction over final state

court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005);

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983); *Rooker v. Fidelity

Trust Co.*, 263 U.S. 413, 415-16 (1923).  *Rooker-Feldman* applies to "cases brought by state-

court losers complaining of injuries caused by state-court judgments . . . and inviting district

court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284.  It is a narrow

doctrine that does not apply when a federal statute specifically authorizes a lower federal court to

vitiate a state court judgment. *Hopkins v. Foothill Mt., Inc. (In re Hopkins)*, 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006) (collecting cases). Furthermore, if a plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobile*, 544 U.S. at 293. Preclusion is not a jurisdictional matter. *See* Fed. R. Civ. P. 8(c)(1).

In his complaint, Debtor alleges in his first count that the underlying state court default judgment is void under section 505(a) of the United States Bankruptcy Code[6] because Tioga County and Treasurer failed to provide Debtor with sufficient notice of the foreclosure proceeding. Code section 505(a) provides, in pertinent part, as follows:

> (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>
> (2) The court may not so determine—
>
>> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title . . ..

11 U.S.C. § 505(a).

A default judgment was entered foreclosing the tax liens against Debtor's property on June 11, 2008, and title to the property was transferred to Tioga County on June 26, 2008, prior to the filing of Debtor's bankruptcy. However, a default judgment is not considered a contested matter under Code section 505(a)(2)(A). *See In re Buchert*, 69 B.R. 816, 818-19 (Bankr. N.D. Ill. 1987) (citing *In re Tapp*, 16 B.R. 315, 320 (Bankr. D. Alaska 1981) (holding that a tax

---

[6] 11 U.S.C. §§ 101–1532 (2010) ("Code").

liability for which judgment was granted in state court by default was not contested within the meaning of Code section 505(a)(2)(A))).  Code section 505(a)(2)(A) permits the relitigation in bankruptcy court of an uncontested tax determination.  *Id.* at 819.  As noted above, *Rooker-Feldman* does not apply where a federal statute specifically authorizes a lower federal court to vitiate a state court judgment. *In re Hopkins*, 346 B.R. at 302.  Accordingly, this court concludes that the *Rooker-Feldman* doctrine does not bar Debtor's claim that the underlying tax foreclosure proceeding is void under Code section 505(a).

Debtor asserts as a separate count that the transfer of the property from Treasurer to Tioga County following the entry of judgment is avoidable under Code section 548.  The bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state court judgments under certain circumstances.  *Id.* at 302; *see also In re Murphy*, 331 B.R. 107, 132 (Bankr. S.D.N.Y. 2005).  Since *Rooker-Feldman* does not apply when a federal statute specifically authorizes a lower federal court to vitiate a state court judgment, the doctrine is inapplicable to Debtor's avoidance action asserted under Code section 548.

Finally, Debtor asserts that the Defendants' conduct at the tax foreclosure auction on August 7, 2008, with full knowledge of the bankruptcy filing, constitutes a willful violation of the automatic stay under Code section 362(k)(1).  As noted above, *Rooker-Feldman* does not bar a plaintiff from presenting an independent claim, albeit one that denies a legal conclusion that a state court reached in a case to which the plaintiff was a party. *In re Hopkins*, 346 B.R. at 302. Accordingly, *Rooker-Feldman* does not apply to bar Debtor's cause of action under Code section 362.

7

*Standing*

Defendants maintain that Debtor has no standing to sue under the bankruptcy provisions under which his claims are brought.  Statutory standing under the Code requires that the movant come within the class of persons intended to benefit from the bankruptcy provision at issue.  *See McRoberts v. S.I.V.I. (In re Bequette)*, 184 B.R. 327, 332 (Bankr. S.D. Ill. 1995) (citing *In re Pointer*, 952 F.2d 82, 86 (5th Cir. 1992)).  A bankruptcy debtor has standing to assert claims under Code sections 505 and 362.  *See In re Deel*, 65 B.R. 230, 232 (Bankr. W.D. Va. 1986) (chapter 7 debtor has standing to raise issue of dischargeability of tax liability under Code section 505); 11 U.S.C. § 362(k) (providing for the recovery of damages by an individual injured by a willful violation of the stay).

Defendants further question the Debtor's standing to bring a claim under Code section 548.  Code section 548 authorizes the avoidance of a fraudulently conveyed transfer of property and expressly authorizes a trustee to bring suit thereunder.  *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . ."); *see In re Hopkins*, 346 B.R. at 305-06 (holding that generally only the trustee may bring an avoidance action under Code section 548).  Under Code section 522(h), a debtor may act under section 548 in certain circumstances.  *See* 11 U.S.C. § 522(h) ("The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer if (1) such transfer is avoidable by the trustee under section . . . 548 . . ., and (2) the trustee does not attempt to avoid such transfer."); *see also* 5 Collier on Bankruptcy ¶ 622.12[2][a] (15th ed. rev. 2009) ("Under section 522(h), the debtor may avoid transfers avoidable by trustees under section[] . . . 548 . . . if the trustee does not attempt to avoid those transfers.  Under section 522(h), the debtor has the opportunity to recover

otherwise exempt assets from creditors who have received avoidable transfers."). Code section

522(h) may be invoked if the transfer was involuntary, the property involved was not concealed

by the debtor and an exemption would be available for the property upon avoidance. 11 U.S.C. §

522(h); 11 U.S.C. § 522(g)(1); *In re Hopkins*, 346 B.R. at 306. In New York, a debtor may

exempt up to $50,000.00 of the value of a principal residence owned and occupied by the debtor.

*See* N.Y. Dr. & Cr. § 282; N.Y.C.P.L.R. § 5206. Here, the transfer of the property by tax

foreclosure proceeding was involuntary, Debtor has made no attempt to conceal the property,[7]

and if the claim to avoid the transfer is successful, either the property recovered or its value will

be impressed with the Debtor's $50,000 homestead exemption claim. *See Deel Rent-a-Car, Inc.

v. Levine*, 721 F.2d 750, 754 (11th Cir. 1983) (holding the plain language of section 522(h) gives

debtors who can exempt property standing to bring actions under the avoidance sections); *see

also In re Binghi*, 299 B.R. 300, 302-03 (Bankr. S.D.N.Y. 2003); *In re Higgins*, 270 B.R. 147,

152-53 (Bankr. S.D.N.Y. 2001).

Further, it is clearly in the best interest of all parties to have the real party in interest

frame and argue the issues before the court. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) ("Have

the appellants alleged such a personal stake in the outcome of the controversy as to assure that

concrete adverseness which sharpens the presentation of issues upon which the court so largely

depends for illumination of difficult constitutional questions[.]"); *cf. Norwalk CORE v. Norwalk

Redevelopment Agency*, 395 F.2d 920, 926-27 (2d Cir. 1968) ("The courts will not, it is clear,

entertain a suit by one who does not have some personal stake in the outcome of the litigation.").

Here, Debtor has the greatest to lose and, therefore, is in the best position to frame the arguments

---

[7] Irrespective of any dispute regarding title to the property, all parties stipulated that the property
was Debtor's former residence and was listed as his residence on his petition. See Joint
Stipulation of Facts, Docket No. 54; Petition, Docket No. 19 (Main Case 08-32050).

before the court.

Based on the foregoing, the court overrules the Defendants' objections to the Debtor's standing.[8] The court will now address the underlying merits of the complaint. The parties recognize this court's core jurisdiction over this matter pursuant to 28 U.S.C. sections 1334 and 157(a), (b)(1) and (b)(2)(A), (B), (G), (H), (I) and (O).

*Discussion*

In the first count of the complaint, Debtor seeks declaratory relief that the underlying state court default judgment be declared void under Code section 505(a) because Defendants failed to provide Debtor with proper notice of the foreclosure proceeding as required by Article 11 of the New York Real Property Tax Law ("RPTL") sections 1124 and 1125.

*Public Notice*

RPTL section 1124 provides that upon the filing of a petition of foreclosure, the enforcing officer must cause a public notice of foreclosure to be published in each of three non-consecutive weeks in a two-month period in no less than two newspapers, fixing the last day for redemption at least three months after the date of the first publication of the notice. RPTL § 1124(1) and (3).

At trial, the Treasurer testified regarding his office's procedure for notifying a taxpayer of a tax delinquency. (Trial Tr. 99:14-101:25, May 20, 2009). The delinquent taxpayers are sent a reminder letter in September that they have until October 31 to pay their taxes. *Id.* If the taxes remain unpaid, taxpayers' names are published in three different newspapers during the month of November. *Id.* Beginning in December, the Treasurer causes to be filed a notice of pendency of petition in foreclosure at the Tioga County Clerk's Office. *Id.* The office then serves the notice

---

[8] Since the court recognizes the Debtor's standing, the court does not address the chapter 13 trustee's late request at Docket No. 71 for joinder.

of foreclosure and publishes the names of taxpayers facing foreclosure in three different newspapers in January. *Id.* The Treasurer testified that this procedure was followed with respect to notifying the Debtor of the tax delinquency. (Trial Tr. 100:25).

Treasurer further testified that notice of the foreclosure as to Debtor's property was published three times over the course of five weeks in two newspapers designated as official newspapers of Tioga County. (Trial Tr. 104:19-105:3; 120:9). The court received into evidence three affidavits of Carol A. Bailey, who works as a paralegal for the Tioga County Treasurer's Office. Ms. Bailey attests that on January 23, 2008, she placed a full-page advertisement of the properties with outstanding tax liens in the *Sayre Morning Times* and *Tioga County Courier*, which was republished in the February 6 and February 12, 2008, editions of the *Sayre Morning Times*, and in the February 6, February 12 and March 5, 2008, editions of the *Tioga County Courier*. The notice also appeared in the February 3, February 17 and March 2, 2008, editions of the Owego *Pennysaver*, a free newspaper with a circulation of approximately 18,000. (Bailey Aff. Ex. 20; Bailey Aff. Ex. 21; Bailey Aff. Ex. 22; Trial Tr. 102:9).

Based upon the foregoing, the court finds that Defendants satisfied the public notice requirements of RPTL section 1124.

*Personal Notice*

RPTL section 1125 provides that personal notice of the commencement of a foreclosure proceeding must be sent to the property owner both by certified mail and by ordinary first class mail on or before the date of first publication of public notice, and that the personal notice is deemed received unless *both* mailings are returned within forty-five days of being delivered. RPTL § 1125(1)(a) and (1)(b)(i). The intended recipient's failure to receive any such notice does not invalidate the tax or enforcement thereof. *Id.* at (3)(b); *see also Ellis v. City of Rochester*,

11

643 N.Y.S.2d 279, 280 (N.Y. App. Div. 1996).

Notice of tax foreclosure proceedings require "'notice reasonably calculated, under all the circumstances, to apprise that party of the foreclosure action', so that the party may have an opportunity to appear and be heard." *Kennedy v. Mossafa*, 100 N.Y.2d 1, 9 (2003) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Jones v. Flowers*, 547 U.S. 220, 232-33 (2006); *Luessenhop v. Clinton County*, 466 F.3d 259, 268-69 (2d Cir. 2006).   The purpose of RPTL section 1125 is to "provide the constitutionally mandated notice reasonably calculated to apprise interested parties of the pendency of the tax sale proceeding and afford them an opportunity to present their objections." *Law v. Benedict*, 603 N.Y.S.2d 75, 77 (N.Y. App. Div. 1993). "[T]he absence of strict technical compliance with each statute in the notification scheme for an in rem tax foreclosure proceeding is not a fatal defect if the interested parties receive actual notice, which is the goal of the scheme." *Id.*; *see also Pompe v. City of Yonkers*, 578 N.Y.S.2d 585, 588 (N.Y. App. Div. 1992).

At trial, Treasurer testified that his office sent copies of the notice of petition and petition of foreclosure to Debtor by certified and regular, first class mail in January 2008. (Trial Tr. 102:6-9).   The notices were assembled, stapled, signed and addressed by Ms. Bailey and a certificate of service was then completed by Ms. Bailey on January 7. (Trial Tr. 102:20-23; Bailey Aff. Ex. 16; Bailey Aff. Ex. 19).   Ms. Bailey then arranged to have the boxes of mail picked up by the Building and Grounds Department and delivered to the Department of Social Services to be metered internally. (Trial Tr. 102:18-103:2).   The mass mailing involved approximately 20 boxes or 2,000 pieces of mail. (Trial Tr. 102:23-24).   Treasurer testified that the Department of Social Services would then take the boxes of mail to the Owego Post Office as per their office procedure. (Trial Tr. 103:6-9).   According to the Treasurer, the whole process

12

would ordinarily take a week to ten days. *Id.*

Treasurer testified that the certified mail receipt of the notice sent to Debtor by certified mail indicated that delivery was attempted three times but that the letter was unclaimed. (Trial Tr. 96:23-34). Treasurer further testified that if the letter had been incorrectly addressed, in his experience, the letter would have been returned as undeliverable rather than as unclaimed. (Trial Tr. 97:11-13); *See Orange County Comm'r of Finance v. Helseth*, 875 N.Y.S.2d 754, 759 (N.Y. Sup. Ct. 2009) ("While '[unclaimed] does not on its face indicate that an address is invalid . . . the notation undeliverable' [does].") (citing *Harner v. County of Tioga*, 800 N.Y.S.2d 112, 114 (N.Y. 2005)).

As part of the record, the Defendants introduced two affidavits of mailing. In these affidavits, Ms. Bailey attests that on January 7, 2008, she sent copies of the petition and notice of foreclosure by certified and regular, first class mail to Debtor at the property address, which Debtor testified is his residence and the address at which he receives mail. (Bailey Aff. Ex. 16; Bailey Aff. Ex. 19; Trial Tr. 6:19-7:3). Ms. Bailey testified that the notices were sent to the Owego post office for mailing pursuant to the procedure described above. (Trial Tr. 177:1-181:13). The certified mail receipt of the notice sent to Debtor by certified mail, received into evidence as Defendant's Exhibit 17, was stamped as received by the post office on January 18, 2008. (Def. Ex. 17; Trial Tr. 181:17-23). Treasurer testified that the notice sent to Debtor by regular, first class mail was not returned, that no other mailings sent by his office to Debtor at the property over the previous two years had ever been returned, and that he had received no complaints about mail not reaching the post office after it left his office in 2008, nor did he know of any circumstances where the procedure was unsuccessful and mail did not get to the post office. (Trial Tr. 103:10-104:15).

Debtor's argument that notice was insufficient in this case is based upon certain technical irregularities in service, *i.e.*, that, in contradiction to her sworn affidavit of service, Ms. Bailey did not personally place the letters in the post office depository, but rather employed an agent of the Tioga County Treasurer's Office to do so, and did not ensure that the letters were in fact mailed on January 7, 2008, as the certified letter was not stamped as received by the post office until eleven days later, on January 18, 2008.   However, Debtor testified that he contacted Treasurer's office in March 2008 and was informed that he owed taxes.  (Trial Tr. 38:12-25, 39:15-18).  Debtor also testified that he had three to five conversations with Ms. Bailey starting in March 2008, that he requested and was granted extensions of time to pay the taxes due, and that in order to insure contact between himself and Ms. Bailey, Ms. Bailey requested several contact numbers for Debtor.  (Trial Tr. 43:11-18; 44:8-23).  Although Debtor denies ever being told that failure to pay his taxes would result in foreclosure, Ms. Bailey testified that she spoke with Debtor "many times" in the spring of 2008 and that "[m]any times [she] warned him that [the County] would foreclose." (Trial Tr. 166:9-11; 168:5).[9]  Treasurer also testified that on June 12, 2008, he stapled a foreclosure notice on the right side of the barn on the property, which is located in front of the mailbox on the property, and placed an additional foreclosure notice in the mailbox at that time.  (Trial Tr. 79:8-13).  The court accepts Ms. Bailey's testimony and specifically finds that she had multiple conversations with the Debtor and informed him of the consequence of failing to pay his taxes.  Based upon the record of testimony including the Debtor's own statements, the court finds that Debtor received actual notice of the foreclosure

---

[9] There is a discrepancy in Debtor's deposition testimony and the testimony he gave at trial regarding his knowledge of the foreclosure.  At his deposition, the transcript of which was introduced by the Debtor and received into evidence, Debtor testified that he saw the notice and petition of foreclosure "January, February or March" of 2008 (Trial Tr. 31:12-32:2; 66:14-17); at trial, however, Debtor denied ever being aware of the foreclosure proceeding.  (Trial Tr. 32:7-16).

proceeding. *See Law v. Benedict*, 603 N.Y.S.2d at 77 (N.Y. App. Div. 1993) ("[T]he absence of strict technical compliance with each statute in the notification scheme for an in rem tax foreclosure proceeding is not a fatal defect if the interested parties receive actual notice, which is the goal of the scheme."); *Pompe v. City of Yonkers*, 578 N.Y.S.2d 585, 588 (N.Y. App. Div. 1992) (finding that notice naming the wrong party was not deficient where it was received by the real party in interest and provided in time for the real party in interest to defend).

The court further notes that Debtor requested and was granted two extensions of the deadline for paying his delinquent taxes. Treasurer testified that Debtor visited the Tioga County Treasurer's Office on March 27, 2008, and paid his 2007 real property taxes, at which time Debtor was informed of the amount of 2006 real property taxes owed and was given an additional month, through April 2008, to pay the taxes. (Trial Tr. 106:21-25). Treasurer further testified that he later authorized a second extension for Debtor to pay the taxes through the end of May 2008. (Trial Tr. 107:11-13). As a seasoned home owner, it should have been no surprise to Debtor that taxes were due on the property and that he would have to pay them. *See In re Bouchard*, 810 N.Y.S.2d at 570 ("As a property owner, respondent is fairly 'charged with the knowledge that property taxes are regularly levied and that a default may result in a forfeiture.'") (quoting *Maple Tree Homes v. County of Sullivan*, 794 N.Y.S.2d 472, 474 (N.Y. App. Div. 2005)).

Based upon the foregoing, the court finds that Tioga County and Treasurer satisfied the personal notice requirements of RPTL section 1125.

Accordingly, Debtor's challenge to the validity of the Action under Code section 505(a) is denied.

*Fraudulent Conveyance*

Debtor alternatively seeks to avoid the transfer of the property by Treasurer to Tioga County as a fraudulent conveyance under Code section 548.  Code section 548(a) provides in pertinent part that:

> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> > (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > > (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).  An action to recover a fraudulent transfer is for the benefit of creditors. *In re Weisman*, 112 B.R. 138, 140 (Bankr. W.D. Pa. 1990) ("The fundamental purpose of the § 548 fraudulent conveyance statute was to protect creditors from transfers of assets of the debtor.").  A debtor is "insolvent" when the sum of the debtor's debts is greater than the sum of the debtor's property at a fair valuation, exclusive of property transferred with actual fraudulent intent and property that may be exempted from the estate.  11 U.S.C. § 101(32)(A); *see also* 5 Collier on Bankruptcy ¶ 548.05[1][a] (15th ed. rev. 2009).  Debtor bears the burden of proof of establishing the elements for avoidance under Code section 548. *Burdick v. Lee*, 256 B.R. 837, 839-40 (D. Mass. 2001) (citing *McColley v. Jacobs (In re North American Dealer Group, Inc.)*, 62 B.R. 423, 428 (Bankr. E.D.N.Y. 1986)).  Schedules filed with a bankruptcy petition showing liabilities in excess of assets do not, without more, constitute *prima facie* evidence of insolvency. *Id.* at 840 (citing *Annis v. First State Bank (In re Annis)*, 78 B.R.

962, 967 (Bankr. W.D. Mo. 1987)).

The order for judgment entered on June 26, 2008, awarded possession of and title to the property to Tioga County. Pursuant to the order of judgment, Treasurer conveyed the property to Tioga County by deed on June 26, 2008, within two years of Debtor's filing for bankruptcy on August 7, 2008. If this court accepts as evidence of the actual value of the property the only two numbers before the court, namely, the value ascribed to the property by the Debtor in Schedule A on the one hand, and the auction price bid for the property by Defendant Mule on the other, then the property has a value of between $321,000.00[10] and $665,000.00.[11] Under prevailing case law, the transfer of the property even pursuant to an *in rem* tax foreclosure proceeding in satisfaction of approximately $19,932.04 in unpaid real property taxes,[12] would not constitute "reasonably equivalent value." *See In re Murphy*, 331 B.R. at 120-21; *In re Wentworth*, 221 B.R. 316, 319-20 (Bankr. D. Conn. 1998); *Harris v. Pennisi (In re Harris)*, 2003 WL 25795591, *5 (Bankr. N.D.N.Y. 2003) ("[T]axing authorities are not entitled to a conclusive presumption that they provided reasonably equivalent value when they took title to a debtor's real property, prepetition, pursuant to a strict tax foreclosure proceeding . . . ."). However, the Debtor also has the burden of proof in establishing that he was insolvent at the time of the transfer or rendered insolvent thereby. As discussed below, the court finds that Debtor has failed to carry its burden on this essential element.

The transfer of the property took place on June 26, 2008, less than two months before

---

[10] The value of Debtor's property is listed a $321,000.00 on Schedule A of Debtor's bankruptcy petition (Main Case No. 08-32050, Docket No. 19).
[11] The successful bid for the property at the August 7, 2008, auction was $665,000.00. (Def. Ex. 4).
[12] Debtor lists debts to Tioga County for unpaid property taxes of $11,159.26 for tax year 2006 and $8,772.78 for tax year 2008, for a total of $19,932.04, in Debtor's Amended Schedule E (Main Case No. 08-32050, Docket No. 21).

Debtor filed his chapter 13 petition on August 7, 2008, and there has been no evidence introduced that Debtor's assets or the amount of his indebtedness significantly changed during this two-month interval. Accordingly, the court will look to the schedules filed by the Debtor as supplemented by the testimony at trial for a snapshot of the Debtor's assets and liabilities at the date of filing for the purpose of evaluating the balance sheet test for insolvency under Code section 548.

Schedule B of Debtor's bankruptcy petition filed on September 9, 2008, lists personal property valued at $25,404.00, of which $5,404.00 in property is claimed as exempt. Accepting the values ascribed by the Debtor to his assets, Debtor claims nonexempt assets of $20,000.00 on August 7, 2008. Absent on the listing of personal property is any interest in a gas lease. Debtor testified that he had a five year gas lease with Fortuna Energy, which called for an "up front" payment of $20,000.00, which he received in the summer of 2007, and, in addition, receives an annual payment of approximately $1,000.00. (Trial Tr. 59:12-25; 60:1-6). This income stream was not disclosed on his schedules and would not be exempt. Schedule A lists no real property other than the transferred property, and the transferred property is not included in the calculation of insolvency.

Turning to the Debtor's liabilities, on the Schedules filed on September 9, 2008, Schedule D of Debtor's petition includes a secured debt of $10,047.00 for an automobile loan. Schedule E lists an unsecured priority claim in favor of New York State Department of Tax & Finance in the amount of $83.47. The additional $25,000.00 listed as owing to Tioga County on Schedule E, which was reduced to $19,932.04 in an amended Schedule E filed on September 22, 2008, represents property taxes owed to Tioga County that were satisfied by the property transfer and are, therefore, excluded from the balance sheet test. Therefore, only the $83.47 of Debtor's

unsecured, priority debts on Schedule E will be included in the balance sheet test.

The original Schedule F filed on September 9, 2008, listed only two general, unsecured debts representing credit card obligations totaling $949.00. There is no information provided as to when the debts were incurred or testimony proffered at the hearing for this court to conclude that they are properly includible in the insolvency calculation. In the Debtor's "Amended Schedule F" filed on September 22, 2008, the same unsecured debts are the only two listed by Debtor.

Seven months after the filing, on March 27, 2009, Debtor again amended Schedule F of his petition to list for the first time an additional $56,803.20 in unsecured, non-priority debts. The timing of this amendment, on the eve of trial, first listing debts that were not included in either the initial filing or made part of the amended filing on September 22, 2008, make the apparent motive for their inclusion obvious and the "debts" subject to a high level of scrutiny. Of those debts added, two were incurred post-transfer and are, therefore, immediately excluded from the balance sheet test. The first is a personal loan of $9,000.00 from Debtor's mother that was used, in large part, to pay $8,146.05 to the County for 2009 property taxes, representing the 2009 County tax and a relevy of the 2008-2009 school tax, which the Debtor did not personally owe since the property, at that time, was owned by Tioga County. (Trial Tr. 55:11-13). Also listed is a second personal loan of $300.00 from Debtor's mother to help pay attorney's fees incurred in filing the bankruptcy petition. (Trial Tr. 52:11-15). Of the remaining $47,503.20 in unsecured, non-priority debts, $39,000.00 is made up of alleged personal loans from Debtor's mother, including $10,000.00 for settlement costs in selling Debtor's prior property in Dutchess County, $5,000.00 for moving expenses from Dutchess County to the property at issue and $24,000.00 for Debtor's college expenses. (Trial Tr. 51:1-55:6). On cross-examination, Debtor

19

admitted that there was no written documentation to substantiate any of the three alleged loans and that no interest rate had been agreed upon for their repayment. *Id.* Debtor further admitted that the alleged $24,000.00 loan for college expenses had been outstanding since his college graduation in 1982. (Trial Tr. 51:12-20). The court finds that Debtor has failed to meet his burden of establishing that these monetary transfers from mother to son were personal loans rather than gifts.

The record is also devoid of proof regarding two debts first listed in the March 27, 2009 amendment as owed to Cathy Patak, who was described by the Debtor as a personal friend and housekeeper. (Trial Tr. 56:14-19). The first, in the amount of $1,000.00, is listed as a personal loan for payment of 2007 taxes; the second, in the amount of $1,920.00, is listed as damages for six weeks loss of work resulting from Cathy Patak being bitten by the Debtor's dog. There is nothing in writing to substantiate the debts and the court finds the proof adduced to substantiate the latter of the two debts wholly inadequate to sustain its inclusion as a bona fide obligation.

Two additional debts are listed in the amendment: $3,583.20 owed to Kitchen, Hearth & Spa, Inc. for installation of three fireplaces at the property and $2,000.00 owed to Shaun Kalba as the balance owing for landscaping work performed on the previously-owned Dutchess County property. The Debtor testified that he sold the latter property in 2005 for $750,000.00, from which he netted $110,000.00, after paying $341,000.00 in cash for the property in Tioga County. (Trial Tr. 22:17-24; 23:1-8). Flush with cash at that time, Debtor furnished no explanation as to why there is an outstanding $2,000.00 balance for landscaping which, again, was not substantiated by any written records.

Even if the court were to accept the remaining liabilities listed, excluding the debts listed in favor of Helen Martyak and the $1,920.00 "dog bite" claim in favor of Cathy Patak, the

liabilities total $17,662.67 ($10,047.00 from Schedule D, $83.47 from Schedule E and $949.00, $1,000.00, $3,583.20 and $2,000.00 for a total of $7,532.20 from Schedule F), which is less than the value of the Debtor's nonexempt assets.   Since Debtor's nonexempt assets exceed the Debtor's liabilities, the court concludes that the Debtor was not insolvent at the time the property was transferred, nor was the Debtor rendered insolvent as a result of the transfer.   Accordingly, Debtor has failed to establish an essential element to sustain an avoidance claim under Code section 548 and the claim must be denied.

Debtor also argues that the transfer of the property constitutes a preferential transfer under Code section 547, which was first raised by counsel in his post-trial memorandum.   Debtor failed to plead this count in his initial pleading and did not raise it during the course of the trial or at closing arguments. The court could rightfully choose to ignore it. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 38 (1989) (a court may decline to address an argument inadequately briefed and argued).   However, the action would fail substantively for the same missing element fatal to the 548 cause of action, namely the Debtor's insolvency.   Notwithstanding the presumption of insolvency of the debtor during the 90 day period preceding the filing of the petition supplied by section 547(f), it is a rebuttable presumption, *see In re Roblin Industries, Inc.*, 78 F.3d 30, 34 (2d Cir. 1996) (stating the presumption of insolvency in the 90 days prior to the filing is rebuttable and that "[a] creditor may rebut the presumption by introducing some evidence that the debtor was not in fact insolvent at the time of the transfer."), easily overcome on the present record.   Even were the preference issue properly before the court, Debtor would be unable to establish the essential elements of such a claim.

*Violation of the Automatic Stay*

Finally, Debtor argues that Defendants willfully violated the automatic stay imposed by

Code section 362(a).  Code section 362 provides, in relevant part, that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(3)–(4).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  RPTL section 1131 provides that, "[i]n the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest and a judgment in foreclosure may be taken by default . . . ."  RPTL § 1131.  Thus, "a debtor's rights are extinguished *at the time his right to redeem the [p]roperty expires.*"  *Wisotzke v. Ontario County*, 2009 WL 1754617, *2 (W.D.N.Y. June 23, 2009) (affirming the bankruptcy court's finding that the debtor lost legal and equitable title to property upon failure to timely redeem) (emphasis in original).  RPTL section 902 provides that property taxes become a lien on the property as of the first day of January of the fiscal year for which levied and shall remain a lien until paid.  RPTL § 902.  RPTL section 1110 provides that the redemption period expires two years after the lien date, except that a tax district may increase the redemption period for residential property in the manner provided by RPTL section 1111.  RPTL § 1110(2).  Notwithstanding the foregoing, if the public notice of foreclosure published pursuant to RPTL section 1124 specifies a later date for the expiration of the redemption period, the redemption period expires on the later date specified.  *Id.*

In this case, the lien date for Debtor's unpaid 2006 real property taxes was January 1, 2006.  *See* RPTL § 902.  Thus, the general two-year redemption period would have expired on January 1, 2008.  However, because the published notice of foreclosure specified March 31,

2008, as the last date for redemption, Debtor's equitable right of redemption expired on March 31, 2008, prior to the filing of Debtor's bankruptcy petition. Debtor then received two additional one month extensions through the end of May 2008 by which to pay his taxes and redeem the property. (Trial Tr. 106:21-107:13). The filing of the deed transfer to Tioga County extinguished Debtor's legal title to and equitable interest in the real property on June 26, 2008, more than a month prior to the filing of Debtor's bankruptcy petition. *See Wisotzke*, 2009 WL 1754617 at *2. Since Debtor had no legal or equitable interest in the property as of the commencement of the case, the property did not become property of the estate and the auction held on August 7, 2008, did not violate the automatic stay. Any possessory interest Debtor may have in the property has remained undisturbed, as the parties stipulated that no eviction proceeding was ever commenced against Debtor.[13] Accordingly, Debtor's claim under Code section 362(k)(1) is denied.

*Conclusion*

The court recognizes what may be perceived as a harsh result in this case, i.e. the forfeiture of property in satisfaction of unpaid taxes that amount to only three to six per cent of the property's value. And yet, the court is mindful of the background circumstances presented by this case. The Debtor, well educated and gainfully employed, chose to ignore his obligation to pay real property taxes, which is one of the basic obligations attendant to the right to own real property. This court sees many cases involving persons who default on their tax obligations due to dire financial circumstances; this is not one of those cases. It is evident that this bankruptcy filing was initiated solely to reverse the effect of forfeiture, the ultimate remedy afforded the

---

[13] As there has been no violation of the automatic stay, this court need not consider Debtor's request for actual damages, punitive damages and attorney's fees, or the cross-claim by Reynolds and Koeberle against Tioga County.

county by the state legislature to address tax delinquencies.    Particularly at this time in our economy, counties that are cash-strapped will be unable to provide the essential services expected and demanded of them if deprived of the regular receipts from their tax base.    As stated succinctly by the New York Court of Appeals:

> While to an owner who has not abandoned his or her property, learning of its foreclosure is distressing – particularly when the tax due constitute[s] a minuscule percentage of the market value of the property – the owner's interest must be balanced against the State's interest in collecting delinquent taxes, taking into account the status and conduct of the owner . . . .

*Kennedy v. Mossafa*, 100 N.Y.2d at 10.    Here, Debtor was provided many opportunities to pay his delinquent taxes and keep the property.    Despite the efforts and patience of the County and Treasurer, those amounts were not paid.    The County then lawfully exercised its statutory right to foreclosure.    There is no basis for this court to reverse that result.

For the foregoing reasons, Debtor's claims under Code sections 505, 548 and 362 are denied.    This decision is without prejudice to the Plaintiff's right to seek by separate adversary proceeding recovery of the $8,146.05 paid on February 25, 2009, for 2009 taxes, representing the County tax and a relevy of the 2008-2009 school tax, at a time when the property was no longer owned by the Debtor.

A separate judgment dismissing the complaint will be entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

So ordered.

Dated: February 5, 2010
        Syracuse, New York

Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge

24